## Case No. 5,874.

### GURNEY v. CROCKETT.

[Abb. Adm. 490.] [1]

District Court, S. D. New York. Feb., 1849.

MARITIME LIENS—PERSONAL SERVICES IN AND UPON VESSEL.

1. To impart a maritime character to personal services rendered in or upon a vessel, they must be connected with the reparation or betterment of the vessel, or be rendered in aid of her navigation directly by labor on the vessel, or in sustenance and relief of those who conduct her operations at sea. [2]

[Cited in Cunningham v. Hall. Case No. 3,-481; The Minna, 11 Fed. 759.]

2. A person employed to visit a vessel at anchor, from time to time, to see to her safety, ventilate her, try her pumps and the like, cannot maintain a suit in admiralty to recover his compensation for such services. But if, in the course of such employment, a necessity arises that such keeper should get the ship under way, and navigate her from one anchorage to another, this is a maritime service for which libellant may recover in a court of admiralty.

[Cited in The May Queen. Case No. 9,360; The Geo. T. Kemp, Id. 5,341; The Trenton, 4 Fed. 662; The Erinagh, 7 Fed. 234; The Canada, Id. 122; The Maggie P., 32 Fed. 300; The Pulaski, 33 Fed. 384.]

This was a libel in personam by Jacob Gurney against William Crockett, to recover wages earned by the libellant as ship-keeper. The respondent, master of the schooner Excelsior, employed the libellant to unload her, as stevedore, on her arrival from Tampico. It appeared that the libellant was afterwards employed to watch and take care of the vessel during the temporary absence of the master from town. The agreement on the part of the libellant was, that he should have the schooner anchored at a proper place, with a sufficient length of chain payed out for her safety, and should visit her and see, that she remained in good condition, and secure from harm, but that he need not remain on board at night. During the master's absence, and while the vessel was in charge of the libellant, she was moved from her anchorage, by advice of the resident physician, and moored some hundred yards from the

1 [Reported by Abbott Brothers.]
2 Compare the somewhat analogous definition of a maritime service given in Cox v. Murray [Case No. 3,304], where it was decided that a libel could not be maintained for a breach of contract for services.

shore. The libellant afterwards went out to her frequently, nearly every day, in his own boat or that of the schooner, and occasionally opened her hatches to air her, and pumped her out. The libellant's claim was chiefly contested on the ground that the court had not jurisdiction of such a demand.

J. B. Purroy, for libellant.
E. C. Benedict, for respondent.

BETTS, District Judge. Assuming the demand of the libellant to be well founded, he has, in my judgment, no remedy for it in a court of admiralty. The line of discrimination between cases which are maritime in their nature and those not so, is exceedingly dim and vague; and in the contested state of admiralty jurisdiction in respect to these border subjects, it is most desirable to keep within the limits of the clear powers of the court.

Manifestly not every contract in relation to maritime matters falls within the cognizance of maritime courts; and without attempting to define with strictness the terms within which the jurisdiction of admiralty courts is circumscribed, it may be safely asserted, that to impart a maritime character 'to a subject relating to personal services in vessels, it must be connected with the reparation or betterment of the vessel, or be rendered in aid of her navigation, directly by labor on the vessel, or in sustenance and relief of those conducting her operations at sea.

Under this general description, services are compensated as maritime which are not necessarily performed by mariners, or which may not in any way contribute to the benefit of a vessel in a nautical sense. Such are those of a cabin-boy, steward, chambermaid, and surgeon, on a voyage. These instances, however, carry the rule to its farthest extension, and are embraced within it because the services are performed mainly at sea, and have an immediate tendency to the preservation of the ship by promoting the health and efficiency of the ship's company. 2 Dod. 100; Shaw v. The Lethe [Case No. 12,721]; 3 Hagg. Adm. 376; Turner's Case [Case No. 14,248]; Hindman v. Shaw [Id. 6,514]; U. S. v. Thompson [Id. 16,492]; Macomber v. Thompson [Id. 8,919]; Trainer v. The Superior [Id. 14,136]. The case of engineers and firemen of steamships may appropriately be ranged under the head of maritime service, as their employment is necessary to the propulsion and navigation of the vessel.

When we recede from these classes to those of a more obscure claim to a maritime character, and even to such as can only be brought under the cognizance of the court by adopting the most enlarged interpretation of its powers, it would seem advisable for the subordinate tribunals, particularly in cases not subject to review, to confine their action within well authenticated limits.

A ship-keeper is ordinarily nothing more

than a watchman having guard of a vessel anchored in harbor, or lying at a wharf or in a dock. In the present instance, the libellant did not remain on board by night or by day. His duty was to repair occasionally to the schooner, at her anchorage, to see to her safety, open her doors and hatches for ventilation, and to try her pump.

I advert to his casual resort to the vessel. not for the purpose of suggesting a distinction between this case and that of a keeper stationed on board, but to mark the description of services connected with his employment, and to ascertain whether they have the characteristics of maritime. Evidently these duties are in no respect nautical. They can be fully as well performed by shore laborers as by seamen; and the libellant, in this instance, it appears, was a common stevedore.

The services are distinct from the navigation of the vessel, ceasing when that commences; and have the same character and importance on board a hulk under keeping to be broken up or destroyed, as upon a vessel preparing or intended for sea. Sweeping and scrubbing the decks, throwing out and securing lines for her fastening, or keeping watch on the wharf against robbery, fire, or other injuries that might reach a vessel from the shore, are services rendered towards her preservation of like nature with those of ordinary keepers. No principle ever yet announced seems, however, to range services of that description under admiralty jurisdiction.

In the case of New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, the inquiry and discussion as to the just character and extent of the admiralty jurisdiction, was very largely pressed by counsel, and the different members of the court who delivered opinions. The suit in that case was instituted upon a contract of affreightment, for the purpose of recovering a large amount of specie lost in the Lexington, one of the steamers of the respondents, running between New York and Providence, which was consumed by fire on the night of January 13, 1840, on Long Island Sound, about fifty miles from the former city, and probably without the jurisdiction of any state or county. The libel was dismissed by the district court pro formâ, and a decree entered accordingly. On appeal to the circuit court, this decree of dismissal was reversed, and a decree entered for the libellants.

Upon the review of the case before the supreme court, it is manifest that a strong portion of that high tribunal are disposed to restrain the admiralty jurisdiction within boundaries quite as narrow as the common-law courts in England have ever demanded; and the judgment of the court in that case, affirming the decree for the libellants, after renewed argument, seems to have been obtained only on the consideration that it was in character a case of tort at sea.

The result of the reasonings of the several judges demonstrates that the positions taken in the opinion delivering the judgment of the court were not sanctioned by a majority of the members concurring in the result. Two of the judges who declined assenting to the authority of the court over the subject as a matter of maritime contract, held, that cognizance could be taken of it as a tort, and on that ground united in supporting the decree.

So far as contract and service can characterize a subject and bring it under the jurisdiction of admiralty courts, those particulars are certainly not of less force in an undertaking for transportation of goods upon the high seas and the actual attempt to execute the agreement, than in one to act as keeper to a vessel lying in port. In my view of this claim, it is for mere labor, not for the reparation or fitment of the vessel, and in no respect maritime, as being nautical in its character, or distinguishable from ordinary services rendered in going to and from a vessel, or incidental to her probable employment at sea. I shall therefore disallow the claim entirely in this action.

It appears upon the testimony, that during the period the libellant was keeper of the vessel, he was directed by the health officer to move her from her anchorage farther out into the bay. He was compelled to get her under way and navigate her to the designated place. This was comparatively a small service, but it was in its nature maritime, and the libellant had a right to resort to this court to receive a proper compensation for it. As his remedy might have been equally perfect in a local court, costs would be denied him, but that the respondent has evinced a disposition to contest unreasonably and unnecessarily this demand, fair and just in itself. Had he proffered a reasonable reward for that service, no costs would have been adjudged against him. On the facts before me, I shall decree the libellant two dollars for that service, and summary costs, and dismiss the libel for the residue of the demand. Decree accordingly.